UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JAIME M. ROBERTS, | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No: 3:20-CV-322 |
| v. | ) | |
| | ) | Judge Collier |
| GLENDA GIBBS, JULIE MINTON, and | ) | |
| AMY BALL | ) | Magistrate Judge Guyton |
| | ) | |
| *Defendants.* | ) | |

**M E M O R A N D U M**

Before the Court are three motions: a motion to dismiss by Defendants Amy Ball and Julie

Minton (Doc. 17); a motion to dismiss by Defendant Glenda Gibbs (Doc. 20); and a motion by

Plaintiff, Jaime M. Roberts, to amend her complaint (Doc. 29).  For the reasons set out below, the

Court will **GRANT IN PART** and **DENY IN PART** Plaintiff's motion to amend (Doc. 29) and

**DENY AS MOOT** Defendants' motions to dismiss (Docs. 17, 20).

**I.      BACKGROUND[1]**

This dispute arises from the removal of Plaintiff's children by the Tennessee Department

of Children's Services ("DCS") in July 2019.  Defendants Gibbs, Ball, and Minton are DCS

employees.  Defendant Ball is Defendant Gibbs's direct supervisor, and Defendant Minton

supervises both Defendant Ball and Defendant Gibbs.

Plaintiff is the biological mother of three children, D.M.R., L.C.R., and P.J.S.  In July 2019,

Plaintiff had primary custody of D.M.R. and P.J.S. and a valid shared parenting plan for custody

and care of L.C.R.  On July 21, 2019, P.J.S. told Plaintiff that physically inappropriate conduct

---

[1] This summary of the facts accepts all of the factual allegations in Plaintiff's Complaint
(Doc. 1-1) as true. *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  Any additional
facts provided in the proposed amended complaint (Doc. 29 at 9–17) are noted as such.

had occurred during a visit with his biological father. Plaintiff took P.J.S. to the emergency room where he was interviewed by medical personnel. On July 23, 2019, Defendant Gibbs interviewed P.J.S. and inspected Plaintiff's home for safety concerns.

After the interview and the inspection, Defendant Gibbs told Plaintiff she would be in touch but raised no concerns. The next day, on July 24, 2019, Defendant Gibbs called Plaintiff and said there were no safety concerns. However, unbeknownst to Plaintiff, Defendant Gibbs called the police and falsely told them Plaintiff had threatened to take her children and run.

Shortly thereafter, Defendant Gibbs arrived at Plaintiff's home with the police. She notified Plaintiff that court orders authorized her to remove Plaintiff's children, although Defendant Gibbs did not show Plaintiff these orders. Defendant Gibbs told Plaintiff that "we" had reason to believe Plaintiff had coached the children and that such conduct justified their removal. Defendant Gibbs "made statements to Plaintiff that supervisors Julie Minton and Amy Ball were also involved in the decision to remove the children from [P]laintiff's care." (Doc. 2 at 4.) According to the proposed amended complaint, Defendant Gibbs stated the removal decision "was not hers alone and that it came from 'higher up,'" and during the removal, Defendant Gibbs was texting with Defendant Ball. (Doc. 29 at 12.) Defendant Gibbs told Plaintiff she could not contact her children. The proposed amended complaint adds that Defendant Gibbs pressured and coerced Plaintiff into signing an immediate protection agreement (the "IPA"), in which she agreed not to contact her children.

Soon after the removal, Plaintiff learned there were no court orders authorizing the removal of her children. In addition, there were no exigent circumstances regarding the children's safety. Rather, Plaintiff alleges her children's removal was a coordinated effort by Defendants to retaliate for a 2012 complaint she had made against Defendant Minton.

2

On July 29, 2019, Plaintiff hired an attorney who contacted DCS.[2]  Defendant Gibbs then contacted Plaintiff and said the parenting plan had been restored, and Plaintiff picked up her children.

On July 21, 2020, Plaintiff, representing herself, filed this lawsuit against Defendants Ball, Gibbs, and Minton, asserting claims under 28 U.S.C. § 1983 for violations of her substantive- and procedural-due-process rights.  (Doc. 2.)

Defendants have now moved to dismiss Plaintiff's claims.  (Docs. 17, 20.)  With the assistance of counsel, Plaintiff has filed responses in opposition. (Docs. 30, 31.)  Plaintiff also has filed a motion to amend her complaint to clarify several issues raised in Defendants' motions to dismiss and add new factual allegations.  (Doc. 29.)  In response to Plaintiff's motion to amend, Defendants Ball and Minton argue the proposed amended complaint still fails to state a claim. (Doc. 34.[3])  Plaintiff has filed a reply.  (Doc. 35.)

Defendants' motions to dismiss and Plaintiff's motion to amend are now ripe for review.

## II.     STANDARDS OF REVIEW

### A.     Motion to Dismiss for Failure to State a Claim

A party may move to dismiss a claim for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In deciding a Rule 12(b)(6) motion to dismiss, a court must first accept all of the complaint's factual allegations as true and construe the complaint in the light most favorable to the plaintiff.  *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).  All

---

[2] Plaintiff's Complaint and the proposed amended complaint allege Plaintiff hired this attorney on July 29, 2020, but later allegations suggest the year is a typographical error.  (*See* Doc. 2 at 4 (alleging "Plaintiff picked up DMR that day, July 30, 2019"); Doc. 29 at 14 (same).)

[3] Defendant Gibbs did not respond to Plaintiff's motion to amend, and the time to do so has expired.  *See* E.D. Tenn. L.R. 7.1(a).

ambiguities must be resolved in the plaintiff's favor. *Carter by Carter v. Cornwell*, 983 F.2d 52, 54 (6th Cir. 1993) (citing *Jackson v. Richards Med. Co.*, 961 F.2d 575, 577 (6th Cir. 1992)). Bare legal conclusions, however, need not be accepted as true. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After assuming the veracity of factual allegations and construing ambiguities in the plaintiff's favor, the Court must then determine whether those allegations "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Sufficient factual allegations are pleaded when a court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged" and there is "more than a sheer possibility that a defendant has acted unlawfully." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To determine whether the complaint states a plausible claim on its face, a court must "draw on its judicial experience and common sense." *See id.* at 679.

If a party presents matters outside the pleadings in connection with a pending motion to dismiss, the court must either exclude those matters from consideration or treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d). Documents attached to the pleadings are considered part of the pleadings, Fed. R. Civ. P. 10(c), and a court's consideration of documents referenced in a complaint that are integral to the claims does not convert a motion to dismiss into a motion for summary judgment. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

### B.     Motion to Amend

Under Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleading before trial with the court's leave, which "[t]he court should freely give . . . when justice so requires." The court's discretion is "limited by Fed. R. Civ. P. 15(a)'s liberal policy of permitting

amendments to ensure the determination of claims on their merits." *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990) (quoting *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987)). In evaluating whether to grant leave to amend, the court should consider "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment . . . ." *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III.   DISCUSSION

Because "[a]n amended complaint supersedes an earlier complaint for all purposes," *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013), pending motions directed to an initial complaint are generally denied as moot when an amended complaint is filed. *See, e.g., Lopez v. Metro. Gov't of Nashville*, No. 3:07-CV-0799, 2008 WL 913085, at *2 (M.D. Tenn. Apr. 1, 2008) (denying a motion for summary judgment after amended complaint filed). There is an exception to this general rule when the amended complaint is substantially identical to the initial complaint. *See, e.g., Greater Cincinnati Coal. for the Homeless v. City of Cincinnati*, No. 1:08-CV-603, 2009 WL 3029661, at *4 (S.D. Ohio Sept. 16, 2009).

Plaintiff's proposed amended complaint adds new factual allegations regarding the children's removal and the IPA, and thus it is not substantially identical to the initial complaint. Accordingly, the Court will first consider Plaintiff's motion to amend and then address Defendants' motions to dismiss.

### A.   Plaintiff's Motion to Amend

In deciding whether to grant leave to amend a complaint, a court should consider whether the proposed claims would be futile. *See Thiokol Corp. v. Dep't of Treasury, State of Mich.,*

5

*Revenue Div.*, 987 F.2d 376, 383 (6th Cir. 1993); *N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1284 (6th Cir. 1997).  A proposed claim is futile if it could not withstand a Rule 12(b)(6) motion to dismiss.  *See Thiokol Corp.*, 987 F.2d at 383.

Since Defendant Gibbs did not respond to Plaintiff's motion to amend, the Court assumes she does not oppose the motion.  *See* E.D. Tenn. L.R. 7.2 ("Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought.").  Defendants Ball and Minton raise three issues that are relevant to determining whether Plaintiff's proposed amended complaint would be futile: (1) whether it clarifies in which capacity, individual or official, she has sued Defendants; (2) whether service of process was proper; and (3) whether the proposed amended complaint plausibly alleges § 1983 claims.  Each issue is addressed in turn.

### 1.      Individual Capacity Versus Official Capacity

Plaintiff's complaint fails to identify the capacities in which she sues Defendants: individual, official, or both.  (*See* Doc. 2.)  The Eleventh Amendment prohibits suits against States unless the State has waived its sovereign immunity.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66–67 (1989).  Suits against state officials in their official capacity are treated as suits against the State and, thus, are usually barred by the Eleventh Amendment.  *Id.* at 71.

Plaintiff's proposed amended complaint clarifies she is suing Defendants in their individual, not official, capacities.  (Doc. 29 ¶¶ 5, 11; Doc. 31 ¶ 12; *see also* Doc. 29 at 9–10.) Therefore, the Eleventh Amendment would not bar Plaintiff's claims set forth in the proposed amended complaint.  *See Hafer v. Melo*, 502 U.S. 21, 31 (1991) (holding the Eleventh Amendment "does not bar" suits against "state officials, sued in their individual capacities").

6

## 2. Service of Process

Defendants Ball and Minton argue Plaintiff's motion to amend should be denied because she has not served them in their individual capacities. (Doc. 34 at 12–14.) Plaintiff asserts service was proper, as Defendants Ball and Minton's collective response shows actual receipt, and, alternatively, the Court should allow her to cure any deficiency in service of process. (Doc. 29 ¶ 7; Doc. 31 ¶¶ 5, 9.)

As an initial matter, Defendants' appearances in this case do not obviate Plaintiff's obligation to properly serve them with process. *See Massey v. Hess*, No. 1:05-cv-249, 2006 WL 2370205, at *2 (E.D. Tenn. Aug. 14, 2006) (quoting *LSJ Inv. Co. v. O.L.D., Inc.*, 167 F.3d 320, 324 (6th Cir. 1999)) ("The United States Court of Appeals for the Sixth Circuit has instructed 'actual knowledge and lack of prejudice cannot take the place of legally sufficient service.'"). An individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Plaintiff attempted to follow Tennessee law, which allows service by certified mail. *See* Tenn. R. Civ. P. 4.04(10) (allowing service by sending "postage prepaid, a certified copy of the summons and a copy of the complaint by registered return receipt or certified mail receipt to the defendant"). Under this method, service is effectuated only "[i]f the return receipt is signed by the defendant, or by a person designated under Rule 4.04 or by statute." Tenn. R. Civ. P. 4.03(2).

Defendants Ball and Minton assert Plaintiff mailed certified copies to DCS's New Market office, where neither works, and they do not know the individual who signed the certified receipt. (Doc. 34 at 12–14; *see also* Doc. 34-1 ¶¶ 2, 4–5; Doc. 34-2 ¶¶ 2, 4–5.) Plaintiff fails to present evidence to contradict these assertions; rather, her argument rests solely on her reasonable belief

7

that they worked at this location (Doc. 29 ¶ 3). While Plaintiff's belief can be considered in determining whether good cause exists for extending the service deadline, it is not sufficient to make service proper under Tennessee law. *See Dolan v. United States*, 514 F.3d 587, 595 n.4 (6th Cir. 2008) (finding service by certified mail improper under Tennessee law, in part, because the plaintiff did "not rebut the defendants' statements that neither defendant worked at the office to which the summons were sent"). As the return receipts were not signed by Defendants and Plaintiff has not rebutted Defendants' assertions that a designated person did not sign the certified receipt, Plaintiff has not served Defendants with process.

However, Rule 4(m) of the Federal Rules of Civil Procedure gives the Court discretion to extend the time for service of process. Fed. R. Civ. P. 4(m); *see also Massey*, 2006 WL 2370205, at *3 ("One part of Rule 4(m) gives a district court discretion to enlarge the 120-day period for good cause shown and even when good cause has not been shown."). The Court finds exercising its discretion to do so is appropriate here for two reasons. First, Plaintiff's belief that Defendants worked at the New Market location appears reasonable, especially in light of her pro se status at the time the summons were issued and her "diligent and good-faith efforts to serve Defendants in a timely manner." *See id.* at *4. Second, "there is no evidence Defendants would be prejudiced by allowing proper service to be made other than the inherent prejudice in defending the lawsuit." *See id.*

Thus, Plaintiff **shall** have up to and including **twenty-one days** from the entry of the accompanying Order to properly serve Defendants.

### 3. Failure to State Claim

Plaintiff asserts her proposed amended complaint adds new factual allegations regarding "the actions of Defendants Minton and Ball which caused the violation of her constitutional

8

rights." (Doc. 29 ¶ 4.) The Court therefore must determine if the proposed amended complaint plausibly alleges claims under § 1983.

To survive a motion to dismiss, a plaintiff need only provide sufficient factual allegations which, if taken as true, plausibly allege she was deprived of a federal right by a person acting under color of state law. *See* 42 U.S.C. § 1983; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere."). In other words, the plaintiff must plead facts sufficient to show: (1) the deprivation of a right, privilege, or immunity secured to her by the United States Constitution or other federal law; and (2) that the individual responsible for such deprivation was acting under color of state law. *Gregory v. Shelby Cnty.*, 220 F.3d 433, 441 (6th Cir. 2000).

Defendants Ball and Minton assert Plaintiff's proposed amended complaint fails to state any § 1983 claim against them for three reasons: (1) the substantive-due-process claim is duplicative of the procedural-due-process claim (Doc. 34 at 6–7); (2) no facts to establish Defendants Ball's or Minton's supervisor liability (*id.* at 8–9); and (3) in the alternative, they are entitled to qualified immunity (*id.* at 10–12). Each argument is addressed in turn.

### a.    Duplicative Due-Process Claim

Defendants Ball and Minton argue Plaintiff's substantive-due-process claim must fail because it "collapses" into her procedural-due-process claim. (Doc. 34 at 6–7.) They argue these two claims rest on the same factual allegations and authority requires the Court to view the substantive-due-process claim instead as a procedural-due-process claim. (*Id.*) Plaintiff responds that the two claims are distinct and separately recognized. (Doc. 35 at 2–4.)

9

"The Supreme Court has repeatedly held that where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process,' must be the guide for analyzing such a claim.'" *Kiser v. Kamdar*, 831 F.3d 784, 791 (6th Cir. 2016) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). For example, a plaintiff cannot assert a substantive-due-process claim to argue an unreasonable search or seizure occurred, since the Fourth Amendment covers such conduct, *see Davis v. Butler Cnty., Ohio,* 658 F. App'x 208, 216 (6th Cir. 2016), or to claim a defendant prevented the free exercise of her religious beliefs, as the First Amendment explicitly establishes that right, *see Resurrection Sch. v. Hertel*, --- F.4th ---, No. 20-2256, 2021 WL 3721475, at *17 (6th Cir. Aug. 23, 2021).

But where there is not an explicit textual source, a substantive-due-process claim may stand, as is the case here. "It is clearly established that the Constitution recognizes both a protectible procedural due process interest in parenting a child and a substantive fundamental right to raise one's child." *Bartell v. Lohiser*, 215 F.3d 550, 557 (6th Cir. 2000). "[T]he differences between the procedural interest in raising one's child and the substantive right . . . are significant." *Id.* at 557. Plaintiff's separate due-process claims recognize the dual rights encompassed in the same liberty interest. Although Plaintiff's claims are based on the same conduct, the Court is aware of no authority holding that the same conduct cannot result in the violation of distinct constitutional rights. *See O'Donnell v. Brown*, 335 F. Supp. 2d 787, 810 n.12 (W.D. Mich. July 30, 2004) ("[I]t is possible for both a procedural and substantive due process claim to arise from the same conduct.").

The cases cited by Defendant do not concern a parent's due-process rights and therefore do not implicate a liberty interest that gives rise to both procedural and substantive due-process

rights. *See Benson v. Osborn*, No. 16-1439, 2018 WL 1628926, at *2 (6th Cir. May 27, 2018) (addressing claims for failure to provide "procedural protections); *Kiser*, 831 F.3d at 791 (finding substantive-due-process claim necessarily was a claim for a First Amendment violation); *Adair v. Hunter*, 236 F. Supp. 3d 1034, 1045–46 (E.D. Tenn. 2017) (concerning alleged sexual harassment).

Thus, the Court finds Plaintiff's substantive-due-process claim is not repetitive of her procedural-due-process claim.

### b.       Supervisory Liability under § 1983

Defendants Ball and Minton argue Plaintiff's proposed amended complaint fails to allege facts sufficient to hold them liable under § 1983 as Defendant Gibbs's supervisors. (Doc. 34 at 8–9.)

To establish a claim for damages, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S at 676; *see also Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014). The requirement to plead such personal involvement arises because "[section] 1983 liability cannot be imposed under a theory of respondeat superior." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005)). "Supervisors are often one step or more removed from the actual conduct of their subordinates; therefore, the law requires more than an attenuated connection between the injury and the supervisor's alleged wrongful conduct." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016). While physical presence at the scene of the alleged constitutional violation is not required, *id.* at 242, the supervising official must have "directly participated, encouraged, authorized or acquiesced in" the alleged unconstitutional conduct. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *see also Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.

11

1984)) ("[T]o succeed on a supervisory liability claim, Plaintiff must show that 'a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'").

Plaintiff argues her § 1983 claims in the proposed amended complaint are based on two separate events: the removal of her children and the coerced signing of the IPA. (*See* Doc. 35 at 5 ("This Court may distinguish the two events for purposes of this motion (1) the forceful removal of the children in violation of Plaintiff's substantive and procedural due process; and (2) the coerced execution of a document.").) The Court addresses whether the proposed amended complaint sets forth allegations to demonstrate Defendants Ball's and Minton's supervisory liability as to each of these alleged violations.

As to the children's removal, three allegations in the proposed amended complaint are relevant to Defendants Ball's and Minton's involvement. First, Paragraph 16 of the proposed amended complaint alleges:

> Gibbs told Plaintiff that 'we' have reason to believe that you (Plaintiff) have coached the children which was the apparent reason for coming to her home. Gibbs told Plaintiff that the decision to remove her children was not hers alone and that it came from '*higher up*.' On information and belief, Plaintiff would show that the 'we' that Gibbs referred to was Minton and Ball.

(Doc. 29 at 12 (emphasis added).) Second, Paragraph 16 also alleges "Gibbs was in direct contact with Defendant Ball by text messages while Gibbs was talking to Plaintiff" on the day the children were removed. (*Id.*) Third, Paragraph 20 alleges "Gibbs made statements to Plaintiff that supervisors Julie Minton and Amy Ball[] also encouraged, condoned, and supported the decision to remove the children from plaintiff's care." (*Id.* at 13.)

At this stage, the Court accepts these factual allegations as true and draws reasonable inferences from them. *See Grindstaff*, 133 F.3d at 421. Defendant Gibbs's statement that the

removal decision came from "higher up" plausibly alleges Defendants Ball and Minton, at the very least, implicitly encouraged, authorized, or acquiesced in the removal of the children, as they were Defendant Gibbs's supervisors. *See Garza*, 972 F.3d at 865. The allegations of "statements" and texting, on their own, may not show supervisory liability, but when viewed alongside the "higher up" statement, Plaintiff has plausibly alleged Defendants Ball's and Minton's supervisory liability as to the removal of Plaintiff's children.

However, the proposed amended complaint does not contain any factual allegations to establish Defendants Ball's or Minton's involvement with the coerced execution of the IPA. Rather, it states "Minton and Ball personally participated in the actions of Gibbs" to intimidate Plaintiff into signing the document. (Doc. 29 at 14.) There are no alleged facts, however, to support this inference. Further, no allegations connect the "higher up" comment or alleged communication between Defendants with the signing of the IPA. The proposed amended complaint therefore would be futile as to Plaintiff's claims against Defendants Ball and Minton based on the coerced execution of the IPA. The Court therefore will **DENY IN PART** Plaintiff's motion to amend (Doc. 29) and **DISMISS WITH PREJUDICE** any claims against Defendants Ball and Minton arising from Plaintiff's signing of the IPA.

The Court proceeds next to the issue of qualified immunity, considering only the remaining claims against Defendants Ball and Minton.

13

### c.      Qualified Immunity

Defendants Ball and Minton argue their actions, taken as true from the proposed amended complaint, entitle them to qualified immunity against Plaintiff's procedural-due-process claim. (Doc. 34 at 10–12.[4])

As an initial matter, Defendants argue the Court should assume that they were told Defendant Gibbs had obtained a court order and that they believed Plaintiff signed the IPA voluntarily. (Doc. 34 at 11–12.) The Court rejects these characterizations. "[A] defendant seeking qualified immunity must be willing to concede to the facts as alleged by the plaintiff and discuss only the legal issues raised by the case." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 722–23 (6th Cir. 2011) (quoting *Sheets v. Mullins*, 287 F.3d 581, 585 (6th Cir. 2002)). In addition, at this motion-to-dismiss stage, the Court must accept Plaintiff's allegations as true. *See Grindstaff*, 133 F.3d at 421. Thus, taking Plaintiff's allegations as true, Defendants Ball and Minton acquiesced or encouraged, at least implicitly, in the removal of Plaintiff's children, knowing there was no court order and not aware of whether Plaintiff voluntarily signed the IPA.

"Qualified immunity shields government actors from civil liability for official acts that do not violate clearly established constitutional rights." *Jones v. City of Elyria, Ohio*, 947 F.3d 907, 913 (6th Cir. 2019). "Whether government actors have violated a clearly established constitutional right is treated as a two-question inquiry: (1) did a violation of the constitutional right occur, and, if it did, (2) was that right clearly established at the time of the violation?" *Id.* During this inquiry, the Court must "assess each actor's liability on an individual basis." *Id.* (quoting *Hope v. Pelzer*,

---

[4] Defendants Ball and Minton argue they are entitled to qualified immunity only as to Plaintiff's procedural-due-process claim (Doc. 34 at 10), so the Court limits its analysis to that claim alone.

14

536 U.S. 730, 741 (2002)). "After a defending officer initially raises qualified immunity, the plaintiff bears the burden of showing that the officer is not entitled to qualified immunity." *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020).

Defendants Ball and Minton fail to clarify whether their arguments focus on the first, second, or both prongs of the qualified-immunity analysis. (*See* Doc. 34 at 10–12.) Regardless, the Court finds Defendants Ball and Minton are not entitled to qualified immunity. Although the allegations regarding Defendants Ball and Minton are substantially similar, the Court considers each Defendant separately below. *See Jones*, 947 F.3d at 953.

### i.      Defendant Ball

Regarding the first prong, "[t]o establish a violation of [her] procedural due process rights, [a plaintiff] must show '(1) that [she] was deprived of a protected liberty interest or property interest, and (2) that such deprivation occurred without the requisite due process of law.'" *Pittman*, 640 F.3d at 729 (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 296 (6th Cir. 2006)).

As to the first element of a procedural-due-process claim, "[a] parent is necessarily deprived of his or her right to custody and control of their child, either permanently or temporarily, when a child is removed from the home." *Kottmyer v. Maas*, 436 F.3d 684, 691 (6th Cir. 2006); *see also Teets v. Cuyahoga Cnty., Ohio*, 460 F. App'x 498, 503 (6th Cir. 2012) (quoting *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007)) ("[E]ven for temporary deprivations of custodial rights, parents are generally entitled to a hearing 'within a reasonable time.'"). Defendant Ball, at the very least, encouraged, authorized, or acquiesced in the removal of Plaintiff's children from her home, so this element is met.

15

As to the second element of a procedural-due-process claim, "in the context of child removal, due process requires, among other things, that 'parents be given notice prior to the removal of the child stating the reasons for the removal and that the parents be given a full opportunity at the hearing to present witnesses and evidence on their behalf.'" *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 724 F.3d 687, 699–700 (6th Cir. 2013) (alterations omitted) (quoting *Doe v. Staples*, 706 F.2d 985, 990 (6th Cir. 1983)). There are several exceptions to the pre-deprivation hearing and notice requirements, such as when a parent voluntarily consents to the child's removal, *see Schulkers v. Kammer*, 955 F.3d 520, 543 (6th Cir. 2020), an exigency exists, *see Kovacic*, 724 F.3d at 700, or the official has a court order authorizing the removal, *see P.F. v. Gordon*, 296 F. Supp. 3d 870, 874 (N.D. Ohio 2017).

At the time of the children's removal, Defendant Ball knew Plaintiff had been provided neither notice nor a pre-deprivation hearing. She also knew there was no court order authorizing the removal or exigency justifying the removal. Likewise, she could not have known whether Plaintiff had voluntarily consented to the removal by signing the IPA, as Defendant Ball was not involved in that conduct and it occurred after her involvement in the removal. Thus, Plaintiff has plausibly alleged Defendant Ball violated her procedural-due-process rights, and Defendant Ball cannot meet her burden to satisfy the first party of the qualified-immunity inquiry as to Defendant Ball.

Turning to the second prong of the qualified-immunity analysis, "[a] right is clearly established for purposes of overcoming the qualified immunity defense when existing precedent has 'placed the statutory or constitutional question beyond debate.'" *Schulkers*, 955 F.3d at 532 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). However, "there need not be 'a case directly on point' for the law to be clearly established." *Barton*, 949 F.3d at 947–48 (quoting *Ashcroft v.*

16

*al-Kidd*, 563 U.S. 731, 741 (2011)). Specifically as to procedural-due-process claims, "[n]otice and an opportunity to be heard are necessary before parental rights can be terminated." *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008) (quoting *Anh v. Levi*, 586 F.2d 625, 632 (6th Cir. 1978)).

As discussed above, there are some exceptions to the clearly established procedural requirements for parental rights. But taking the allegations of the proposed amended complaint as true, none apply to Plaintiff's case. The Court therefore concludes that no reasonable DCS employee, in the absence of an exigency, court order, or voluntary consent, could conclude the law permitted the removal of Plaintiff's children without notice and a pre-deprivation hearing. *See, e.g., Kovacic*, 724 F.3d at 700 (finding district court did not err in holding "no reasonable social worker could conclude that the law permitted her to remove a child without notice or a pre-deprivation hearing where there was no emergency"). Thus, Defendant Ball fails to satisfy the second prong of the qualified-immunity analysis.

Defendant Ball is not entitled to qualified immunity as to Plaintiff's procedural-due-process claim, at least at this stage of the proceedings.

### ii. Defendant Minton

The Court incorporates the law set forth above as to the qualified-immunity analysis for Defendant Minton.

Regarding the first prong, whether Defendant Minton violated Plaintiff's procedural-due-process rights, Defendant Minton participated in the temporary removal of Plaintiff's children, which deprived Plaintiff of a protected liberty interest. Like Defendant Ball, at the time of the children's removal, Defendant Minton was aware that neither notice nor a pre-deprivation hearing had been provided and that there were no circumstances authorizing

17

Defendant Gibbs's actions without such process. Defendant Minton therefore cannot satisfy the first prong of the qualified-immunity analysis, as Plaintiff has plausibly alleged a procedural-due-process claim against Defendant Minton.

The same analysis regarding the second prong for Defendant Ball applies to Defendant Minton. No reasonable DCS employee, in the absence of an exigency, court order, or voluntary consent, could conclude the law permitted the removal of Plaintiff's children without notice and a pre-deprivation hearing. Thus, Defendant Minton is not entitled to qualified immunity as to Plaintiff's procedural-due-process claim against her.

In sum, the Court finds the proposed amended complaint plausibly alleges claims under 42 U.S.C. § 1983 against Defendants Ball and Minton, specifically as to the removal of Plaintiff's children from her home. Thus, Plaintiff's motion to amend (Doc. 29) will be **GRANTED IN PART**. However, as discussed above, Plaintiff's motion (Doc. 29) will be **DENIED IN PART** insofar as she seeks to bring claims against Defendants Ball and Minton arising from her signing of the IPA. Plaintiff will be **INSTRUCTED** to file her amended complaint (Doc. 29 at 9–17) **within three days** of the entry of the accompany Order.

### B.      Defendants' Motions to Dismiss

Defendant Gibbs's motion to dismiss argues she has not been properly served and any claims against her in her official capacity should be dismissed under the Eleventh Amendment. (Doc. 20.) Defendants Ball and Minton make the same arguments as Defendant Gibbs but also assert Plaintiff has not alleged supervisory liability under § 1983. (Doc. 17.)

As the Court is allowing Plaintiff to amend her complaint, Defendants' motions to dismiss are moot. Even so, Defendants' grounds for dismissal have been addressed and resolved, as the proposed amended complaint clarifies Defendants are sued in their individual capacities, the Court

18

has extended the time for service, and the Court has evaluated the issue of supervisory liability.

Defendants' motions to dismiss (Docs. 17, 20) therefore will be **DENIED AS MOOT**.

## IV.    CONCLUSION

For the foregoing reasons, the Court will **ORDER**:

1.    Plaintiff **shall** have **twenty-one days** from entry of the accompanying Order to serve Defendants with process;

2.    Plaintiff's motion to amend (Doc. 29) will be **GRANTED IN PART** as to her claims against Defendant Gibbs;

3.    Plaintiff's motion to amend (Doc. 29) will be **GRANTED IN PART** as to her claims against Defendants Ball and Minton arising from her children's removal;

4.    Plaintiff's motion to amend (Doc. 29) will be **DENIED IN PART** insofar as Plaintiff asserts claims against Defendants Ball and Minton based on her signing of the IPA, and the Court will **DISMISS WITH PREJUDICE** any and all such claims;

5.    Plaintiff will be **instructed** to file her amended complaint (Doc. 29 at 9–17) as a separate document within **three days** of entry of the accompanying Order; and

6.    Defendants' motions to dismiss (Docs. 17, 20) will be **DENIED AS MOOT**.


**AN APPROPRIATE ORDER WILL ENTER.**


**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

19