UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JAIME M. ROBERTS, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 3:20-cv-322 |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| GLENDA GIBBS, | ) | Magistrate Judge Jill E. McCook |
| | ) | |
| *Defendant*. | ) | |

# MEMORANDUM

Before the Court is a motion for summary judgment by Defendant Glenda Gibbs (Doc. 52). Plaintiff responded in opposition (Doc. 59), and Defendant replied (Doc. 60). Defendant has also filed three motions to exclude evidence from the Court's consideration of her summary-judgment motion (Docs. 61, 62, 68), to which Plaintiff has responded in opposition (Doc. 69) and Defendant has replied (Doc. 70). The matter is now ripe for review.

## I. BACKGROUND[1]

Plaintiff is the biological mother and legal parent of D.M.R., L.C.R., and P.J.S. (Doc. 59 at 2.) She has a parenting plan for D.M.R. and L.C.R. with their father and for P.J.S. with his father. (*Id.*) Plaintiff had primary custody of P.J.S. (*Id.*) Defendant was an investigator for Tennessee's Department of Children's Services ("DCS"). (*Id.* at 1.)

On July 21, 2019, Plaintiff picked up P.J.S. from his father. (*Id.* at 2.) P.J.S. complained about his bottom hurting; Plaintiff saw redness around his anus and a rash on his inner leg. (*Id.* at 2–3.) P.J.S. told her that his father had stuck his hand in his "butthole." (*Id.* at 3.) That same day,

---

[1] Factual disputes and reasonable inferences regarding the underlying facts are presented in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiff took P.J.S. to the emergency room at East Tennessee Children's Hospital, where Dr. Abrams interviewed P.J.S. and performed a physical exam. (Doc. 59-2 at 1–2.) Dr. Abrams reported the potential sexual abuse to DCS and advised Plaintiff not to have P.J.S. see his father until he had been evaluated by DCS and was permitted to go. (*Id.* at 5, 8.)

On July 23, 2019, P.J.S. underwent a forensic interview with Dr. Lawhon, a clinical psychologist, at the Safe Harbor Child Advocacy Center of the Smokies.[2] (Doc. 59 at 3–4.) Plaintiff was not present, but according to Dr. Lawhon's report, P.J.S. reported again that his father inserted his finger into his buttocks. (*Id.* at 4.) Defendant also performed a home visit at Plaintiff's residence, finding no concerns about cleanliness or safety. (*Id.*)

On July 24, 2019, Plaintiff received a phone call from Defendant, who told Plaintiff that she had found no reason to restrict P.J.S. from seeing or visiting his father and so P.J.S. would have to go to his father for his scheduled visitation. (Doc. 59 at 4.) According to Defendant's affidavit, Plaintiff became "very upset" and "stated that she feared her child would die in a freak accident if allowed to go visit his father, and that the father would dissolve the child's body in a hole where cows are buried." (Doc. 52-1 at 2.) Defendant avers she did not believe there was a basis for that concern. (*Id.*) She avers Plaintiff also told her she would obtain a new hospital note preventing P.J.S. from visiting his father and that "she was going to leave and take her children with her, and that no one would know their whereabouts." (*Id.* at 2–3.) Plaintiff then called law enforcement regarding what Defendant said. (Doc. 59 at 4–5.) During the 911 call, she saw that Deputy Kevin Carr of the Jefferson County Sheriff's Office was already outside, so she went to speak with him. (*Id.* at 5.) Defendant arrived as well; she told Plaintiff and Deputy Carr that there

---

[2] Plaintiff explains she does not submit a copy of Dr. Lawhon's report because it "would require extensive redaction." (Doc. 59 at 4 n.3.)

was a court order for the removal of all of Plaintiff's children from her custody. (Doc. 59-3 at 2.) Defendant and her direct supervisor, Amy Ball, discussed issuing an immediate protection agreement ("IPA") in which Plaintiff would be prohibited from contacting her children pending a psychological evaluation and court order and the fathers of her children would hold temporary primary custody. (Doc. 52-1 at 3; Doc. 59 at 1; Doc. 59-4 at 1–2.) The father of D.M.R. and L.C.R. and the father of P.J.S. agreed to the IPA. (*Id.*) Ball approved the IPA by phone. (*Id.*) Plaintiff did not sign the IPA, which states, "this document is not a court order. It is a voluntary agreement between the signed parties." (Doc. 59-4 at 1–2.)

Plaintiff complied with the terms of the IPA under the belief that Defendant had a court order authorizing the removal of her children until her court date. (Doc. 59 at 5.) But afterwards, when Plaintiff went to the court clerk's office to request a copy of the court order Defendant had referred to, the clerk informed her there was no such order. (*Id.* at 6.) She then asked Defendant, who said that a petition and order would be submitted in the future, but no petition or order was ever filed to Plaintiff's knowledge. (Doc. 59-1 at 4.) At an unspecified date, the parties held a DCS Child and Family Team Meeting, during which the IPA was dissolved and Plaintiff's original joint custody arrangements resumed. (Doc. 52 at 5.)

On September 17, 2021, Plaintiff filed her first amended complaint suing Defendant, Ball, and Julia Minton[3] in their individual capacities. (Doc. 38 at 1–2.) She alleges they acted in concert to violate her procedural due process rights under the Fourteenth Amendment when "Gibbs lied to Plaintiff and told Plaintiff that she had a court order for the removal of her children from her home without notice and the opportunity to be heard before a Court." (*Id.* at 6.) She also alleges they

---

[3] Like Ball, Minton was a team leader in DCS's Office of Child Safety. (Doc. 55 at 5.) Minton did not directly supervise Gibbs. (*Id.*)

acted in concert to violate her substantive due process rights under the Fourteenth Amendment when "Gibbs lied to Plaintiff and told Plaintiff that she had a court order for the removal of her children from her home interfering with her liberty interest in the right to parent her children without undue government interference." (*Id.* at 6–7.) She seeks three million dollars of compensatory, nominal, and punitive damages. (*Id.* at 8.)

On December 6, 2022, the parties filed a stipulation dismissing the claims against Ball and Minton. (Doc. 58.) Only the claims against Defendant, Gibbs, remain.

II.     **STANDARD OF REVIEW**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing no genuine issue of material fact remains. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003).

If the moving party meets its initial burden, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). A genuine issue for trial exists if there is "evidence on which the jury could reasonably find for the plaintiff." *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (internal quotations omitted). In addition, should the nonmoving party fail to provide evidence to support an essential element of its case, the movant can meet its burden by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmovant. *Anderson*, 477

U.S. at 248–49. The court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). If the court concludes, based on the record, that a fair-minded jury could not return a verdict in favor of the nonmovant, the court should grant summary judgment. *Anderson*, 477 U.S. at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. DISCUSSION

As an initial matter, Defendant urges the Court to dismiss the action because of *Thomas v. Shipka*, 818 F.2d 496, 503–04 (6th Cir. 1987), which holds that 42 U.S.C. § 1983 provides the exclusive remedy for constitutional claims. (Doc. 60 at 1, 2.) Defendant argues that the first amended complaint does not "invoke or otherwise mention" § 1983, so it must be dismissed. (*Id.* at 2.)

Notice pleading "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 48 (1957)). Rule 8(e) of the Federal Rules of Civil Procedure requires courts to construe pleadings "so as to do justice." "No technical form is required." Fed. R. Civ. P. 8(d)(1).

Therefore, Defendant is incorrect that Plaintiff's first amended complaint must be dismissed on the sole basis that it did not explicitly mention § 1983. *Shipka* does not stand for the proposition that all pleadings must invoke § 1983 or face dismissal, and Defendant does not cite any authority stating that such a disposition is proper. Plaintiff's first amended complaint was sufficient to put Defendant on notice that there were constitutional claims brought against her. For

5

instance, in her answer to the first amended complaint, Defendant requests costs and attorney fees in accordance with 42 U.S.C. § 1988, which governs attorney fees in § 1983 actions. Accordingly, the Court rejects Defendant's argument. The Court construes Plaintiff's first amended complaint as an action brought under § 1983.

Plaintiff claims Defendant violated her procedural due process rights and substantive due process rights under the Fourteenth Amendment. The Court will first resolve Defendant's motions to exclude evidence from summary-judgment consideration, and then will consider Plaintiff's procedural due process and substantive due process claims in turn.

### A. Motions to Exclude Plaintiff's Reports and Testimony from Summary Consideration

Defendant submits three motions to exclude portions of the evidence Plaintiff submits with its response to Defendant's motion for summary judgment.

#### 1. Dr. Abrams

First, Defendant requests the Court exclude "any testimony offered through the Declaration of Plaintiff, Jamie Roberts, concerning any matters covered by the expert opinion rules under Fed. Rule Civ. Pro. 26 or F.R.E. 701-706 or any alleged testimony of Dr. Jeffrey Abrams so covered." (Doc. 61 at 1.) Defendant argues that the discovery deadline of July 15, 2022, has passed and "there is no dispute that [Plaintiff] may not introduce or disclose expert testimony in this matter." (*Id.*)

Plaintiff responds that Dr. Abrams will not provide expert testimony. (Doc. 69 at 4.) Dr. Abrams was the emergency room doctor who examined and spoke with P.J.S. on July 21, 2019, making personal observations of P.J.S.'s physical condition. (*Id.*) Therefore, Plaintiff argues, these statements are facts, not opinions, and Dr. Abrams is not rendering any opinions on whether P.J.S. was sexually abused.

6

Defendant replies, "[Plaintiff] has executed an affidavit opining what these gentlemen up [sic] might apply [sic] whatever these individuals may have told her. Not only are [Plaintiff's] statements concerning what Dr. Abrams and Dr. Lawhorn [sic] told her inadmissible hearsay, but so are the reports relied on." (Doc. 70 at 2 (footnote omitted).)

Under Federal Rule of Evidence 803(4), a statement that is made for medical diagnosis or treatment and describes past or present symptoms and their inception or their general cause is not hearsay. Dr. Abrams's emergency room medical notes and the statements he made were made for the purpose of treating P.J.S.; therefore, the evidence Defendant seeks to exclude falls squarely within Rule 803(4) and is admissible nonhearsay. *United States v. Kappell*, 418 F.3d 550, 557 (6th Cir. 2005).

Under Federal Rule of Evidence 701, opinion testimony by lay witnesses is limited to testimony that is "rationally based on the witness's perception" and is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Federal Rules of Evidence 701 and 702 "do not distinguish between expert and lay *witnesses*, but rather between expert and lay *testimony*." *United States v. Afyare*, 632 F. App'x 272, 292 (6th Cir. 2016) (quoting Fed. R. Evid. 701, Advisory Committee Notes, 2000 Amendments). A "lay opinion must be the product of reasoning processes familiar to the average person in everyday life." *United States v. White*, 492 F.3d 380, 402 (6th Cir. 2007) (quoting *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005)). Here, Plaintiff seeks to offer Dr. Abrams's testimony to show that P.J.S. told Dr. Abrams that his father "stuck his hand in his butthole." (Doc. 59-2 at 2; *see* 59-1 at 2.) That is an observation that is rationally based on Dr. Abrams's perception and is not based on specialized medical knowledge falling within the scope of Federal Rule of Evidence 702. Indeed, Plaintiff made a similar observation herself, that P.J.S. had told her on a different occasion that his father

7

had stuck his hand in his buttocks. (Doc. 59-1 at 2.) Therefore, the portion of Dr. Abrams's medical notes at issue in the Court's consideration of Defendant's motion for summary judgment is merely lay testimony.

Accordingly, the Court will **DENY** Defendant's motion to exclude Dr. Abrams's statements (Doc. 61) in the Court's consideration of Defendant's motion for summary judgment.

### 2. Dr. Lawhon[4]

Next, Defendant requests the Court "exclude any testimony offered through the Declaration of Plaintiff, Jamie Roberts, concerning any matters covered by the expert opinion rules under Fed. Rule Civ. Pro. 26 or F.R.E. 701-706 or any alleged testimony of Dr. [Lawhon] so covered." (Doc. 62 at 1.) As grounds, Defendant repeats that the discovery deadline has passed so Plaintiff may not introduce expert testimony. (*Id.*)

Plaintiff responds that Dr. Lawhon is not offering expert testimony, merely his personal observations from his forensic interview of P.J.S., which is "a plain statement of fact." (Doc. 69 at 4.) Additionally, Dr. Lawhon's statements are not hearsay because they are not offered for the truth of the matter asserted; instead, they are offered to contradict Defendant's claims about what P.J.S. said during the forensic interview. (*Id.* at 5.)

Defendant replies with the same argument regarding Dr. Abrams's testimony being hearsay, so the Court will not repeat it here.

Hearsay is a statement that the declarant does not make while testifying and is offered in evidence "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Here, Dr. Lawhon's report from the forensic interview is not being offered for the truth of the matter

---

[4] Defendant refers to him as "Dr. Lawhorn," but the correct name is "Dr. Lawhon," which is what the Court will use. (Doc. 69 at 4.)

asserted—that P.J.S.'s father inserted his finger into his buttocks—but rather is being offered to contradict Defendant's contention that P.J.S. did not disclose sexual abuse during his forensic interview. Therefore, Dr. Lawhon's report and statements are not hearsay.

As previously stated, lay testimony is rationally based on the witness's perception and is not based on scientific, technical, or other specialized knowledge within the scope of Federal Rule of Evidence 702. The testimony that Plaintiff seeks to offer from P.J.S.'s interview with Dr. Lawhon is not expert testimony, but rather is his testimony that P.J.S. had told him of what happened with his father. (*See* Doc. 59-1 at 2.) Witnesses should not be excluded "based solely on their vocation or perceived specialized knowledge." *Afyare*, 632 F. App'x at 293. Dr. Lawhon's being a psychologist does not necessarily render all of his testimony expert opinion.

Accordingly, the Court will **DENY** Defendant's motion to exclude Dr. Lawhon's statements (Doc. 62) in the Court's consideration of Defendant's motion for summary judgment.

### 3. Preliminary Investigation Report and IPA

Finally, Defendant requests the Court exclude from summary-judgment consideration the preliminary investigation report and IPA. (Doc. 67 at 1.) As grounds, Defendant states only that they are inadmissible hearsay. (*Id.*)

Plaintiff responds that the report is admissible under Federal Rule of Evidence 803(8) as a report of a governmental activity. (Doc. 69 at 5.) Plaintiff contends the IPA is not hearsay because it is not being offered for its truth, but only to document that Plaintiff did not sign it and consent to the removal of her children. (*Id.* at 6.)

Defendant replies only to repeat, without elaboration, that both documents are inadmissible hearsay. (Doc. 70 at 2.) Defendant also argues they are not authenticated. (*Id.*)

9

Under Federal Rule of Evidence 803(8), a record of a public office is not hearsay if it sets out "a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel" and "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Here, the preliminary investigative report falls squarely within this exception. Defendant has not offered anything suggesting that the circumstances of the report indicate a lack of trustworthiness, so the report is admissible under Rule 803(8).

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Here, Defendant is not offering the IPA for the truth of the contents, but rather to show that Plaintiff did not sign it. Therefore, the IPA is not hearsay.

Regarding authenticity, the Court of Appeals for the Sixth Circuit has generally held that courts should disregard unauthenticated documents when deciding a motion for summary judgment. *Alexander v. CareSource, Inc.*, 576 F.3d 551, 558 (6th Cir. 2009). "However, a court may consider unauthenticated documents when deciding a motion for summary judgment 'where the objecting party simply argue[s] that the proponent failed to authenticate the documents, as opposed to challenging the authenticity of the documents.'" *Louisville Galleria, LLC v. Phila. Indem. Ins. Co.*, 593 F. Supp. 3d 637, 645 (W.D. Ky. 2022) (quoting *Thomas v. Nat'l Coll. of Va., Inc.*, 901 F. Supp. 2d 1022, 1035 (S.D. Ohio 2012)). Here, Defendant does not challenge the authenticity of the IPA and preliminary investigative report but rather argues that they should be inadmissible because Plaintiff failed to authenticate them before submitting them into the record. (Doc. 70 at 2.) Because Defendant does not contest the authenticity of the IPA and preliminary investigative report, the documents are properly before the Court, and the Court will consider them in resolving Defendant's motion for summary judgment.

Accordingly, the Court will **DENY** Defendant's motion to exclude the preliminary investigation report and IPA (Doc. 67) from the Court's consideration of Defendant's motion for summary judgment.

Next, the Court will address the merits of Defendant's motion for summary judgment.

### B. Procedural and Substantive Due Process

"It is clearly established that the Constitution recognizes both a protectible procedural due process interest in parenting a child and a substantive fundamental right to raise one's child." *Bartell v. Lohiser*, 215 F.3d 550, 557 (6th Cir. 2000) (citing *Michael H. v. Gerald D.*, 491 U.S. 110, 119–23 (1989)). Procedural due process protects persons from deficient procedures leading to the deprivation of cognizable liberty interests, while substantive due process provides that the government may not deprive individuals of fundamental rights unless the action is necessary and motivated by a compelling purpose. *Bartell*, 215 F.3d at 557–58 (first citing *Mathews v. Eldridge*, 424 U.S. 319, 333–34 (1976); then citing *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)).

Plaintiff brings both a procedural-due-process claim and a substantive-due-process claim. Defendant argues she is entitled to summary judgment on both.

#### 1. Procedural Due Process

Defendant argues that she did not violate Plaintiff's procedural-due-process right. (Doc. 52 at 7.) But she does not go beyond reciting the holdings from various cases. (*See id.* at 7–9.) In so doing, Defendant fails to meet her initial burden of showing that no genuine dispute of material fact remains and she is entitled to judgment as a matter of law. Accordingly, the Court will **DENY** Defendant's motion for summary judgment on Plaintiff's procedural-due-process claim.

### 2. Substantive Due Process

Defendant argues that she had credible information from Plaintiff herself that she would leave with her children against the terms of the established custody arrangements and against state law. (Doc. 52 at 11.) "Such action by Plaintiff was not only untenable, but a real threat existed as no one knew [Plaintiff's] intent or mental state." (*Id.*) Therefore, Defendant argues, she did not violate Plaintiff's right to substantive due process.

Plaintiff's response addresses procedural and substantive due process in conjunction. She argues that given the absence of consent, a petition for removal, or an *ex parte* removal order, "Defendant Gibbs is left with contriving 'exigent circumstances' to justify the removal of [Plaintiff's] children." (*Id.* at 14.) Plaintiff argues that Defendant does not point to any case law suggesting that Plaintiff's alleged statement that she was going to run away with her children justifies removing her children. (*Id.* at 14–15.) She also points out that Defendant's argument "consists principally of recitation of case law as opposed to application of the facts in this case to that law." (*Id.* at 13.) Plaintiff asserts that she had never told Plaintiff she was going to run away with her children. (*Id*. at 15.) She also asserts Defendant misrepresented to her and to the officer who wrote the preliminary investigative report that there was a court order authorizing the removal of her children. (*Id.*) Plaintiff notes that Defendant never applied to get a court order even forty-eight hours after the removal, in violation of DCS's administrative policies and procedures requiring a petition to be filed no later than forty-eight hours after the child is removed. (*Id.* at 14.)

"[T]he Supreme Court has repeatedly reaffirmed the existence of a constitutional right to the maintenance of a parent–child relationship." *Teets v. Cuyahoga Cnty., Ohio*, 460 F. App'x 498, 501 (6th Cir. 2012) (quoting *Kottmyer v. Maas*, 4346 F.3d 684, 689 (6th Cir. 2006)).

Governmental investigation into allegations of child abuse do not infringe upon a family's fundamental rights unless there is "evidence of bad faith, improper motive, or investigation tactics that 'shock the conscience.'" *Teets*, 460 F. App'x at 502 (quoting *Kottmyer*, 436 F.3d at 691 n.1). When assessing the constitutionality of the governmental action, the court must assess whether the acts were undertaken to ensure the health and safety of the children and whether the particular means employed were narrowly tailored to achieve that end. *Bartell*, 215 F.3d at 558 (citing *Glucksberg*, 521 U.S. at 721). A claim must show there was bad faith or intentional misrepresentation in order to survive a motion for summary judgment; otherwise, it "would risk leaving scores of social workers subject to suit for legitimate child-abuse investigations." *Teets*, 460 F. App'x at 502.

Here, the parties dispute whether Plaintiff's actions justified the imposition of the IPA to protect the health and safety of Plaintiff's children. Defendant contends that she was justified based on "credible information from the Plaintiff herself." (Doc. 52 at 11.) Defendant avers that Plaintiff told her "that she was going to leave and take her children with her, and that no one would know their whereabouts." (Doc. 52-1 at 3.) Defendant also avers that Plaintiff "stated that she feared her child would die in a freak accident if allowed to go visit his father, and that the father would dissolve the child's body in a hole where cows are buried." (*Id.* at 2.) Defendant avers she believed Plaintiff's fear lacked any basis. (*Id.*) On the other hand, Plaintiff declares, "[a]t no time did I tell Defendant Gibbs that I would run away with my children," as evidenced by how she was waiting outside of her house to speak with law enforcement when Defendant arrived at her house. (Doc. 59-1 at 4.) Plaintiff also argues that Defendant intentionally mispresented that she had a court order; Plaintiff declares that she would not have complied with the terms of the IPA had she known there was not a petition or order for removal of her children. (*Id.*) Plaintiff submits a copy

13

of the preliminary investigative report, which notes that Defendant explained to Plaintiff that "at this time there was a court order to have the children removed from her and placed with their fathers . . . and that she was to have no contact with them until their court date." (Doc. 59-3 at 2.) The report also notes that Plaintiff "agreed to comply with the court orders." (*Id.*)

The conflicting testimony from Plaintiff and Defendant amount to a genuine dispute of material fact as to whether the IPA was narrowly tailored to ensure the health and safety of Plaintiff's children. With all reasonable inferences drawn in Plaintiff's favor, the Court finds that her substantive-due-process claim survives summary judgment because she has shown that the removal of her children was premised upon Defendant's misrepresentation of Plaintiff's intent to leave with her children and Defendant's falsely claiming there was a court order authorizing the removal of her children. Defendant's basis for the IPA appears solely to have been Plaintiff's alleged statement about her belief that the children's fathers would dissolve the children's bodies in a hole where cows are buried and her alleged statement that she was going to leave and take her children with her. But Plaintiff denied making those statements, and neither party has submitted any other evidence that Plaintiff's mental state at the time justified the actions taken by the IPA. Defendant has not met her burden of showing that the IPA was necessary to protect Plaintiff's children on the basis of Plaintiff's alleged mental state. In other words, Defendant has not shown the state had any interest in protecting Plaintiff's children because the facts as taken on summary judgment do not demonstrate that Plaintiff could not adequately care for her children. *Schulkers*, 955 F.3d at 541. Accordingly, the Court will **DENY** Defendant's motion for summary judgment on Plaintiff's substantive-due-process claim.

### D. Qualified Immunity

Defendant argues that she is entitled to qualified immunity because she is a government official, performing discretionary functions, who did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. (Doc. 52 at 11–12.) She also argues that Plaintiff has not presented evidence of a constitutional violation. (*Id.* at 12.) Therefore, she argues, she is entitled to qualified immunity. (*Id.*)

Plaintiff responds that in 2013, the Court of Appeals for the Sixth Circuit upheld the district court's reasoning that "[n]o reasonable social worker could conclude that the law permitted her to remove a child without notice or a pre-deprivation hearing where there was no emergency." *Kovacic v. Cuyahoga Cnty. Dep't of Children & Fam. Servs.*, 724 F.3d 687, 700 (6th Cir. 2013). (Doc. 59 at 11.) Therefore, she argues, Defendant is not entitled to qualified immunity. (*Id.*)

"A defendant enjoys qualified immunity on summary judgment unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009). "After a defending officer initially raises qualified immunity, the plaintiff bears the burden of showing that the officer is not entitled to qualified immunity." *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020). A "right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Morrison*, 583 F.3d at 400. In the Sixth Circuit, it is "clearly established that Fourth Amendment warrant requirements, including the exigent-circumstances exception, apply to the removal of children from their homes by social workers." *Kovacic*, 724 F.3d at 699. As early as 2002, the law was

15

clearly established "that a social worker could not seize children from their home without a warrant, exigent circumstances, or another recognized exception." *Id.* at 698.

For the first prong, Plaintiff has shown that a reasonable jury could find that Defendant violated her procedural-due-process right and substantive-due-process right, as the Court explained in the earlier analysis of Plaintiff's claims.

For the second prong, Plaintiff has shown that Defendant violated her clearly established rights by implementing the IPA without a court order, exigency, or Plaintiff's consent. It was clearly established in 2002 that Defendant could not remove Plaintiff's children without a court order, her consent, or exigent circumstances, so it remained clearly established in July 2019.

Accordingly, the Court finds that Plaintiff has met her burden of showing that Defendant is not entitled to qualified immunity on summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court will **DENY** Plaintiff's motion to exclude testimony concerning Dr. Abrams (Doc. 61), **DENY** Plaintiff's motion to exclude testimony concerning Dr. Lawhon (Doc. 62), **DENY** Plaintiff's motion to exclude reports (Doc. 67), and **DENY** Defendant's motion for summary judgment (Doc. 52).

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**